2001 OK CIV APP 50

**Theresa J. PFLEIDERER, Petitioner,**

v.

**MERCY HEALTH CENTER and the Workers' Compensation Court, Respondents.**

**No. 94599.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Jan. 26, 2001.

Certiorari Denied April 3, 2001.

Jack Barragree, Jack Barragree, P.C., Oklahoma City, OK, for Petitioner.

J. William Archibald, Holloway Dobson, Jennings & Bachman, Oklahoma City, OK, for Respondent Mercy Health Center.

## OPINION

ADAMS, Presiding Judge:

¶1 Claimant Theresa Pfleiderer was employed as a "Staff X–Ray Tech" at Mercy Edmond Clinic, operated by Employer Mercy Health Center. On the day in question, Claimant was at work when she noticed that the shoe string on her left shoe was untied. In her words, "I looked down and saw my shoe was untied so I was going to put my foot up on a chair and the next thing I knew I was on the floor." As a result of the fall, Claimant suffered a fractured right foot, and filed her Form 3 seeking benefits as a result of her injury.

¶2 Claimant was the only witness called by either party and testified as noted above. When asked about what, in her mind, were the "work-related reasons" for tying her shoe, she testified, "Well for safety reasons so I didn't fall on somebody." After offering into evidence a copy of Employer's personnel policy statements distributed to employees, including the dress code applicable to Claimant's employment duties, which was admitted without objection, Claimant also testified that compliance with the dress code was also a motivating factor in tying her shoes, noting "because to me walking around with untied shoes is very sloppy looking and I don't think it would make a good impression for the patients to see me walking around with shoes untied." [1]

¶3 On cross-examination, Claimant testified that the shoes she was wearing at the time of her injury were her work shoes and that she did not wear them anyplace other than work, but admitted that if she stopped to run an errand while traveling to or from work, she would be wearing the shoes. She also admitted that if she discovered her shoe untied somewhere besides work, she would stop to tie it.

---

1. At various places, the employment policies and dress code required employees to "dress in a professional manner," refrain from being "in an improper or incomplete uniform," wear apparel that was "neat and in good condition," and be "well-groomed, neat and clean at all times." These same materials specifically limited the selection of "foot coverings" that could be worn, requiring that even approved shoes be "clean, good repair, and protective."

¶ 4 The trial judge denied the claim in an order which found "[Employer's dress] code was not the cause of claimant's injury" and further found that Claimant's injury "did not arise out of claimant's employment." On *en banc* appeal, the three-judge panel affirmed. Because we conclude there is no competent evidence to support the conclusion that Claimant's injury did not "arise out of" her employment as that test is to be applied under current law, we vacate the order denying the claim.

¶ 5 In every workers' compensation case, the claimant has the burden of proving that he or she sustained an accidental injury arising out of and in the course of employment. "In the course of employment" relates to the time, place, and circumstances under which the injury was sustained. "Arising out of" refers to the required causal connection between the accidental injury and risks incident to the employment. *Thomas v. Keith Hensel Optical Labs,* 1982 OK 120, 653 P.2d 201. As noted previously, Employer stipulated to the existence of the first prong of this two-pronged test for workers' compensation coverage, and we need concern ourselves only with the "arising out of" prong.

¶ 6 Where an injury with some causal connection to employment-related activity occurs on the employer's premises and the employee's presence in the workplace is unquestionably employment-related, "there is no need for the court further to inquire into the 'arising out of' prong as a separate issue." *Corbett v. Express Personnel,* 1997 OK 40, n. 7, 936 P.2d 932, 934.

¶ 7 Here, Claimant's evidence, particularly the dress code in the personnel policy and, established beyond question that Employer believed it had an interest in ensuring that its employees presented a neat and professional appearance. This evidence, together with the obvious job-safety risk presented by an employee walking around with a shoe untied, long lace dangling just waiting to be stepped on and send the employee headlong into a floor, a patient, or expensive equipment, demonstrate beyond question that Claimant's action in attempting to tie her shoe was not purely personal.

¶ 8 This record contains no competent evidence to support the conclusion that the need for Claimant to tie her shoe and the risk such activity entails had no causal connection with her employment. Accordingly, the order of the Workers' Compensation Court is vacated, and the case is remanded for further proceedings consistent with this opinion.

¶ 9 VACATED AND REMANDED

¶ 10 CARL B. JONES and JOPLIN, JJ., concur.